## S93A1935. BURTON v. THE STATE.
### (438 SE2d 83)

CARLEY, Justice.

Appellant was tried before a jury and found guilty of malice murder. He appeals from the judgment of conviction and life sentence entered by the trial court on the jury's guilty verdict.[1]

1. Appellant enumerates the general grounds.

The victim was Mrs. Flossie Mae McCounley, who was the grandmother of appellant's girl friend. Mrs. McCounley had raised her granddaughter from infancy and she was still living with Mrs. McCounley at the time of the murder. Mrs. McCounley did not approve of her granddaughter's relationship with appellant. Several days

---

[1] The murder occurred on January 22, 1991. Appellant was indicted on September 26, 1991. The verdict was returned on November 18, 1992. Appellant's motion for new trial was filed on December 2, 1992 and denied on May 3, 1993. Appellant's notice of appeal was filed on May 25, 1993. The instant appeal was docketed on September 16, 1993 and submitted for decision on October 29, 1993.

before the murder, appellant had broken into a home where his girl friend was baby-sitting and he had then beaten her and threatened to "get" her and her "mother." Since Mrs. McCounley had raised her granddaughter, this could readily be construed as a threat by appellant to "get" both his girl friend and Mrs. McCounley. On the night of the murder several days later, appellant's girl friend refused to accept a phone call from appellant. She then went to spend the night with a friend and left Mrs. McCounley home alone. Sometime thereafter, a neighbor heard sounds of a struggle coming from Mrs. McCounley's bedroom, but she did not investigate. The next morning, Mrs. McCounley's co-workers discovered that the door to her house had been broken in and, upon entering, they found Mrs. McCounley's body. She had been stabbed to death. Hair samples which matched appellant's were found in Mrs. McCounley's house. A bloody pair of rubber gloves was found behind Mrs. McCounley's house. Blood on the outside of the gloves matched Mrs. McCounley's. Blood on the inside of the gloves matched appellant's. A small piece of skin found in Mrs. McCounley's bedroom matched that of appellant, who had cuts on his hand. The bloody rubber gloves contained cuts, the location of which matched the cuts on appellant's hand. Articles of appellant's clothing seized from his home evidenced blood which matched his and Mrs. McCounley's.

This evidence was sufficient to authorize a rational trier of fact to find proof of appellant's guilt of the murder of Mrs. McCounley beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. On redirect examination by the State, a civilian employee of the police department was asked to review several evidence control sheets and then to "[t]ell the jury what [he] took to the crime lab on [a certain date]." In response to this inquiry, the witness enumerated several items, among which was "one paper with information on probation from DeKalb County." Despite the lack of any specific reference to indicate that the paper contained information regarding appellant's status as a probationer, appellant moved for a mistrial on the ground that his character had been impermissibly placed into evidence. The denial of this motion for a mistrial is enumerated as error.

In *Ogles v. State*, 238 Ga. 716 (235 SE2d 384) (1977), the State asked a police officer "when he discovered the true name of the defendant. His response was: 'After I checked his record.'" On appeal, we found no error in the denial of the defendant's motion for a mistrial, holding that this testimony fell "just short of putting the defendant's character in issue." *Ogles v. State*, supra at 717.

> The statement by [the civilian police employee] in this case is much less prejudicial than the statement upheld by

this court in *Ogles*. Unlike the police officer's statement in *Ogles*, [the civilian police employee's] statement that he [took, among numerous other items, a paper containing information on probation to the crime lab] does not directly imply that the [paper contained any information on appellant's probation and that it was appellant who] had a criminal record. "Here, the statement was made but once and the [civilian police employee] . . . was merely responding in narrative form to questions asking him to explain what he [had taken to the crime lab on a specific date]." [Cits.]

*Jones v. State*, 250 Ga. 166, 169 (3) (296 SE2d 598) (1982).

[T]he witness here said nothing further about the contents of the [paper] or any previous convictions or arrests. In *Johnson v. State*, 256 Ga. 604 (2) (351 SE2d 623) (1987), this court noted: This court has previously held that a passing reference to a defendant's record does not place his character in evidence. [Cits.]

*Zellner v. State*, 260 Ga. 749, 751 (3) (b) (399 SE2d 206) (1991). Here, there was not even a passing reference to appellant's record. The passing reference was merely to an otherwise unidentified "paper with information on probation from DeKalb County." "There was no reversible error." *Zellner v. State*, supra at 751 (3) (b).

3. Prior to trial, the State had given notice of its intent to introduce evidence of appellant's previous attack upon his girl friend, including evidence of appellant's threat to "get" both his girl friend and her "grandmother." At trial, however, the testimony was that appellant had threatened to "get" his girl friend and her "mother." Urging a discrepancy between the pre-trial notice of a threat against his girl friend's "grandmother" and the trial testimony of a threat against his girl friend's "mother," appellant moved for a mistrial. The denial of this motion is enumerated as error.

There was no error in the denial of appellant's motion for a mistrial. As previously noted, Mrs. McCounley was, in effect, the mother of appellant's girl friend.

"Any eventual disparity between the stated expected evidence and the actual testimony has not been shown to have been known or anticipated by the State at the time of the hearing in the matter. In any event, we do not find such dramatic disparity as claimed by appellant so as to render the acts inadmissible for the stated purposes." [Cit.]

*McGowan v. State*, 198 Ga. App. 575, 576 (1) (402 SE2d 328) (1991).

4. As against the objections which were raised at trial, there was no error in admitting evidence of appellant's previous break-in and attack upon his girl friend. Evidence that, only days before the murder, appellant had broken into a house, beaten his girl friend and threatened her and her "mother" was admissible and probative evidence in determining appellant's guilt for allegedly breaking into his girl friend's house after she had refused his phone call and assaulting and killing her grandmother.

> The nature of the two offenses and the circumstances surrounding their commission were sufficiently similar, and indeed *interconnected,* such that the relevance of the other [offense] to show appellant's [modus operandi, course of conduct, intent], scheme, motive, bent of mind and identity in the present case outweighed any prejudice. [Cits.] "(T)he evidence was not overly prejudicial here, as the jury was [given detailed limiting instructions. . .]." [Cits.]

(Emphasis supplied.) *Malcolm v. State,* 263 Ga. 369, 370 (2) (434 SE2d 479) (1993).

5. Objections to the admission of evidence of appellant's previous break-in and attack upon his girl friend which were not raised at trial present nothing for appellate review. See *Waugh v. State,* 263 Ga. 691 (12) (437 SE2d 297) (1993); *Walker v. State,* 208 Ga. App. 690, 693 (2) (431 SE2d 459) (1993).

6. Appellant did not testify in his own defense. It is urged that the trial court erred in failing to determine whether appellant had made a knowing waiver of his right to testify.

In Georgia, whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process. See *Young v. Ricketts,* 242 Ga. 559 (1) (c) (250 SE2d 404) (1978); *King v. State,* 194 Ga. App. 662, 664 (6) (391 SE2d 660) (1990); *Coonce v. State,* 171 Ga. App. 20, 21 (2) (318 SE2d 763) (1984). This is the rule in a majority of jurisdictions.

> [M]ost courts that have addressed the issue have taken the view that the trial judge has no duty to advise a defendant of the right to testify or to ascertain on the record whether the defendant's waiver of that right is voluntary, knowing, and intentional [cit.].

Annot., 90 ALR4th 586, 590, § 2 [a] (1991).

Moreover, the record in the instant case shows that the trial court did question appellant with regard to whether he would testify. In the course of that inquiry, the trial court established that appel-

lant had elected not to testify in his own defense after consultation with his counsel. Accordingly, even if there were a requirement that a trial court address the topic of a defendant's waiver of the right to testify in his own defense, that requirement would have been satisfied in the instant case.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 1994.

*Brett W. Ladd,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Charles M. Norman, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Matthew P. Stone, Staff Attorney,* for appellee.